# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

Nº 18-CV-3828 (WFK) (RER)

———————————

GERSON LOPEZ,

Plaintiff,

VERSUS

1923 SNEAKER, INC. D/B/A "AIR KICKS" AND SONG JOO CHOI,

Defendants.

———————————

**REPORT & RECOMMENDATION**

March 5, 2021

———————————

**TO THE HONORABLE WILLIAM F. KUNTZ II**
**UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

Your Honor has referred to me for a report and recommendation "all issues" related to Plaintiff's Second Motion for Default Judgment (Dkt. No. 39 ("Plaintiff's Default Motion") and Defendants' partial opposition thereto (Dkt. No. 47 ("Defs.' Opp'n Mem.")). (*See* Dkt. No. 48). For the reasons stated below, I respectfully recommend that Plaintiff's Default Motion be granted in part, and that judgment for $103,634.26 be entered against Defendants, jointly and severally, consisting of: (1) $30,114.98 in compensatory damages; (2) $30,114.98 in liquidated damages; (3) $15,767.50 in prejudgment interest through March 5, 2021, to increase by $7.42 for each day thereafter until the date of judgment; (4) $10,000 in statutory damages;  (4) $17,236.80 in attorneys' fees; and, (5) $400 in costs.

1

# BACKGROUND

### A. Procedural History

On July 2, 2018, Plaintiff Gerson Lopez ("Plaintiff" or "Lopez") commenced this federal and state wage and hour action against Defendants 1923 Sneaker, Inc. ("1923 Sneaker") and Youkyung Choi pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York Labor Law §§ 190 *et seq.* ("NYLL") (McKinney 2021). (Dkt. No. 1). Lopez seeks actual, liquidated, and statutory damages for: (1) unpaid overtime wages; (2) the failure to provide wage notices and wage statements; and (3) "any other claim(s) that can be inferred from the facts set forth" in the Complaint. (Dkt. No. 1 at ¶1).

Upon the original defendants' failure to answer or otherwise respond to the Complaint, Plaintiff requested a certificate of default, and on September 28, 2018, default was entered against 1923 Sneaker and Youkyung Choi. (Dkt. Nos. 14-15). Plaintiff then filed his first motion for default judgment on October 26, 2018. (Dkt. No. 17). On that same date, Your Honor scheduled a hearing on the motion for default judgment for November 7, 2018. (Scheduling Orders dated 10/26/18 and 11/6/18). When 1923 Sneaker and Youkyung Choi failed to appear at the November 7, 2018 default hearing, Your Honor issued an Order to Show Cause why default judgments should not be entered against the Defendants and set a Show Cause Hearing for November 27, 2018. (Min. Entry 11/7/2018; Dkt. No. 19). Plaintiff served the Order to Show Cause and his default motion on 1923 Sneaker and Youkyung Choi by Federal Express delivery on November 9, 2018. (Dkt. No. 18).

1923 Sneaker and Youkyung Choi did not appear at the November 27, 2018 Show Cause Hearing. (Min. Entry 11/27/18). Faulting Plaintiff's counsel for not properly serving the Order to Show Cause and Default Motion upon Defendants, Your Honor issued a Second Order to Show

Cause, scheduled a Show Cause Hearing for February 20, 2019, and ordered Plaintiff's counsel to effect service on 1923 Sneaker via the New York Secretary of State and personally on Youkyung Choi. (Min. Entry 11/27/18, Dkt. Nos. 21 and 22). Plaintiff served the Second Show Cause Order on 1923 Sneaker through the New York Secretary of State on December 20, 2018 (Dkt. No. 23). However, due to the inability to effect personal service on Choi, at Plaintiff's request (Dkt. No. 24) the Second Show Cause Hearing was adjourned to April 3, 2019 (Order dated 2/7/19). Plaintiff subsequently completed service of the Second Order to Show Cause and related papers on Choi. (Dkt. No. 25).

On April 1, 2019, Jong Soo Choi ("Mr. Choi"), the currently named individual defendant, submitted to the Court an affidavit. (Dkt. No. 26 ("Choi Aff.")). Mr. Choi explained that Youkyung Choi is his "estranged adult daughter" and that he, and not Youkyung, is the "director/officer of [] 1923 Sneaker" and that he was Plaintiff's "'boss' and manager [and] had exclusive authority to 'fire' [Plaintiff] . . ." (Choi Aff. ¶ 1). Mr. Choi requested that the Second Show Cause Hearing be adjourned at least thirty days to allow him to obtain an attorney, that he be served with all "relevant papers" in the case, and that an eventual inquest be granted in order to cross-examine Plaintiff regarding alleged damages. (*Id.* at ¶¶ 9-11). The Second Show Cause Hearing was held on April 3, 2019. (Min. Entry 4/3/2019). Neither 1923 Sneaker, Youkyung Choi, nor Mr. Choi appeared. (*Id.*) As a result, the Court entered an order permitting Defendants to appear within thirty days. (Min. Entry 4/3/2019). The Defendants did not appear during this period.

On June 4, 2019, Plaintiff filed an Amended Complaint substituting Mr. Choi for Youkyung Choi as the individual defendant. (Dkt. No. 30 ("Am. Compl.")).[1] Mr. Choi and 1923 Sneaker were served with the Amended Complaint pursuant to N.Y. C.P.L.R. § 308(2) and N.Y.

---

[1] In the interim period, Your Honor scheduled a default hearing (Dkt. No. 27), granted Plaintiff's motion to file an amended complaint (Order dated 6/4/19), and then cancelled the default hearing (Dkt. No. 34).

BUS. LAW § 304, respectively. The Defendants failed to appear or otherwise respond, and upon Plaintiff's request, default was again entered and Plaintiff filed his Second Motion for Default Judgment on October 4, 2019. (Dkt. Nos. 38-39). Your Honor once again issued an Order to Show Cause in Support of Default Judgment. (Dkt. No. 40). On December 31, 2019, an attorney entered an appearance on behalf of Defendants (Dkt. No. 44), and Defendants filed a Memorandum of Law in Opposition to Plaintiff's Motion for Default Judgment ("Memorandum in Opposition") (Defs.' Opp'n Mem).

Importantly, in their Memorandum in Opposition, Defendants notified the Court that they "do not dispute liability" and only contest damages. (Defs.' Opp'n Mem. at 5). Indeed, since entry of default, Defendants have continually requested that Plaintiff's Motion for Default be granted regarding liability (Dkt. No. 45 at 1; Defs.' Opp'n Mem. at 4-5; Inquest Tr. at 13:4-7). After the January 17, 2020 default judgment hearing, Your Honor referred the matter to me for a report and recommendation. (Min. Entry 1/17/20; Dkt. No. 48).

### B. Factual Background

1923 Sneaker was a New York corporation that operated a sneaker and sports apparel store in Far Rockaway, New York. (Am. Compl. ¶¶ 17-18; Dkt. No. 39-3 ("Pl. Decl.") ¶ 3; Dkt. No. 26 ("Choi Aff.") at 1). While in operation, Mr. Choi served as the store's officer and director (Am. Comp. ¶¶ 2, 11; Choi Aff. ¶ 1). In this capacity, Mr. Choi directly managed and supervised the store's employees and was Plaintiff's "boss." (Am. Comp. ¶¶ 2, 11; Choi Aff. ¶ 1).

According to the Amended Complaint, Mr. Choi hired Plaintiff on or about March 12, 2012, and Plaintiff worked for Defendants until on or about March 18, 2018 (Am. Comp. ¶ 2, 19; Pl. Decl. ¶ 3; Inquest Tr. 5:11, 24:5). From March 12, 2012 until December 31, 2014, Plaintiff worked as a sales associate. (Am. Compl. ¶ 19-20; Pl. Decl. ¶ 3-4). In this position, his primary

duties included attending to customers, organizing the stock room, cleaning the store, and selling merchandise. (Am. Compl. ¶ 20; Pl. Decl. ¶ 4). From January 1, 2015 until the end of his employment, Plaintiff worked as a store clerk. (Am. Compl. ¶¶ 19, 21; Pl. Decl. ¶¶ 5-6). His responsibilities included opening and closing the store, charging all merchandise purchased by customers, counting the money in the registers, and reviewing debit and credit card transactions. (Am. Compl. ¶ 19, 21; Pl. Decl. ¶ 5).

During his entire employment, Mr. Choi supervised Lopez and was responsible for setting his work hours, determining his pay, and overseeing the method of his compensation, i.e., cash or check. (Am. Compl. ¶¶ 11, 18; Pl. Decl. ¶ 7-8; Choi Aff. ¶ 1). According to the Amended Complaint, "Defendants required Plaintiff to work, and Plaintiff did work, approximately six days per week, from 9:30 a.m. until 8:00 p.m. without a scheduled or uninterrupted break each day, for a total of sixty-three hours each workweek." (Am. Compl. ¶ 22; Pl. Decl. ¶¶ 10-11; Inquest Tr. 20:6–13, 22–24).[2] Plaintiff testified that he never took a vacation or sick day (Inquest Tr. at 63: 24-25; 64:1). Plaintiff's pay rate increased throughout his employment as follows:

| Date | Wage |
|---|---|
| March 12, 2012[3]-December 31, 2013 | $7.50/hour for all hours worked, including those in excess of forty |
| January 1, 2014-December 31, 2014 | $8.50/hour for all hours worked, including those in excess of forty |
| January 1, 2015-December 31, 2017 | $9.50/hour for all hours worked, including those in excess of forty |
| January 1, 2018-March 18, 2018 | $11.11/hour for all hours worked, including those in excess of forty |

---

[2] At the inquest held on March 5, 2020, Plaintiff testified that the store was closed for "one day, maybe two days" after Hurricane Sandy and he also missed work for one day when his wife gave birth by caesarian section. (Transcript of Inquest (Dkt. No. 52 ("Inquest Tr.") at 26:10-21, 63:11-25). Other than these brief absences, Plaintiff testified that he never missed a day of work. *Id.* at 63:11-64:1.

[3] Plaintiff testified that his starting pay on March 12, 2012 was $7.50/hour. (Inquest Tr. at 7:12-25).

(Am. Compl. ¶¶ 22, 24-26; Pl. Decl. ¶¶ 12-13; Inquest Tr. at 18:18–24).

Plaintiff was paid on a weekly basis, usually in cash, but was sometimes paid with a check towards the end of his employment. (Inquest Tr. at 15:13-25). He was never paid with cash and a check during the same week. (*Id.* at 27: 16-18). Plaintiff testified that Defendants never recorded his hours in any way, and he was never asked to sign any documents attesting to the hours that he worked. (Inquest Tr. at 15:2-8).

Additionally, Plaintiff claims that Defendants failed to provide him with a wage notice when he was hired or at any time thereafter. (Am. Compl. ¶ 28; Pl. Decl. ¶ 16). Plaintiff also claims that Defendants failed to provide any statement during his employment that accurately listed the hours he worked or his straight and overtime pay rates. (Am. Compl. ¶ 27; Pl. Decl. ¶ 15).

Defendants do not dispute their liability for any of Plaintiff's claims. (Defs.' Opp'n Mem. at 4; Inquest Tr. at 13:4-7).

## **DISCUSSION**

### I. **Default Judgment Standard**

"Default judgments are 'generally disfavored and are reserved for rare occasions.'" *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quoting *Enron*, 10 F.3d at 96). A default serves as the defendant's admission that the complaint's well-pleaded factual allegations are true. *Masino v. Architectural Pavers Corp.*, No. 09-CV-2213 (DLI) (RER), 2009 U.S. Dist. LEXIS 126462, at *4 (E.D.N.Y. Dec. 2, 2009), *R & R adopted by* 2010 U.S. Dist. LEXIS 32502 (Jan. 15, 2010); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (after default the "court is required to accept all of the [plaintiff's] [well-pleaded] allegations as true and draw all reasonable inferences in its favor."). Here, the Defendants have also expressly conceded all factual allegations of liability. (Dkt. No. 45 at 1; Defs.' Opp'n Mem. at 4-5; Inquest Tr. at 13:4-7).

It remains the responsibility of the court, however, "to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." *Rolls-Royce PLC v. Rolls-Royce, USA Inc*., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing *Au Bon Pain Corp. v. Artect, Inc*., 653 F.2d 61, 65 (2d Cir. 1981)).

## II.    Liability

In light of Defendants' concession of liability (Dkt. No. 45 at 1; Defs.' Opp'n Mem. at 4-5; Inquest Tr. at 13:4-7), it is unnecessary to engage in a protracted discussion of whether the Amended Complaint sufficiently alleges Defendants' liability under the FLSA or NYLL. Suffice it to say that I have carefully reviewed the Amended Complaint and find that Lopez has established that Defendants are liable under both statutes.

Plaintiff qualifies for the FLSA's and NYLL's protection:[4] (1) 1923 Sneaker and Mr. Choi were Lopez's employers and are subject to the FLSA and NYLL (Am. Compl. ¶¶ 11-12; Pl. Decl. ¶¶ 7-9; Choi Aff. at ¶¶1-2);[5] (2) Plaintiff is an employee within the meaning of the FLSA and

---

[4] To qualify for protection under the FLSA, a "plaintiff must allege that (1) defendant is an employer subject to the FLSA; (2) plaintiff is an employee within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Vega v. K & C Interior Constr. Corp.*, No. 18-CV-00182, 2018 U.S. Dist. LEXIS 147583, at *4 (E.D.N.Y. Aug. 28, 2018) *R & R adopted by* 2018 U.S. Dist. LEXIS 156484 (Sept. 13, 2018). "The standard governing employment status under the NYLL is nearly identical to that of the FLSA." *Brito v. Lucky Seven Rest. & Bar*, No. 19-Civ-3876 (PAE) (KHP), 2020 U.S. Dist. LEXIS 139008, at *11 (S.D.N.Y. July 31, 2020) (quoting *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 305 (S.D.N.Y. 2019); *compare* 29 U.S.C. § 203(d) ("'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."), *with* N.Y. LAB. LAW § 190(3) ("'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."). "As such, the analysis of Defendants' employment status under the FLSA applies with equal force to Plaintiff's NYLL claims," *Brito*, 2020 U.S. Dist. LEXIS 139008, at *11, and an employer under the FLSA is an employer under the NYLL. *See Ethelbeth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 359 (E.D.N.Y. 2015) (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 292) (E.D.N.Y. 2011)) ("New York's Labor Law is the state analogue to the Federal FLSA.").

[5] An employer is subject to the FLSA if the aggrieved employee is either "(1) 'engaged in commerce or in the production of goods for commerce,' (individual coverage) or (2) 'employed in an enterprise engaged in commerce or in the production of goods for commerce' (enterprise coverage)." *Rocha v. Bakhter Afghan Halal Kababs, Inc.*, 44 F. Supp. 3d 337, 342 (E.D.N.Y. 2014) (quoting 29 U.S.C. § 206(a) and § 207(a)(1)). A business is an "enterprise" if it has at least two employees, earns at least $500,000 in gross revenue sales, and has some connection to interstate commerce. 29 U.S.C. §§ 203(s)(1), 207. A connection to interstate commerce exists if the business "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by

NYLL (Am. Compl. ¶ 19-21; Pl. Decl. ¶ 3-6);[6] and (3) Plaintiff's employment was not exempt from FLSA or NYLL protection (Am. Compl. ¶ 2; Pl. Decl. ¶ 3-4).[7] Having satisfied these requirements, Plaintiff has established that he is entitled to FLSA and NYLL protection.

Lopez has sufficiently alleged that Defendants are liable for unpaid overtime compensation.[8] Plaintiff alleges that he did not receive overtime pay for the hours he worked in excess of forty each week. (Am. Compl. ¶ 2, 23-25; Pl. Decl. ¶ 13). Although Defendants challenge

---

any person." 29 U.S.C. § 203(s)(1)(A)(i). Plaintiff's allegations are sufficient for the purpose of establishing FLSA enterprise coverage. *See, e.g., Cabrera v. Canela*, 412 F. Supp. 3d 167, 173 (E.D.N.Y. 2019) *adopting* 2019 U.S. Dist. LEXIS 38775 (Mar. 8, 2019) ("Plaintiff's conclusory allegations of interstate conduct are sufficient to support his [FLSA] claim."); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. Mar. 19, 2015) (finding a complaint which simply restated the statutory definition to be sufficient because it was "reasonable to infer that the myriad goods necessary to operate a . . . restaurant with an eat-in dining area and over $500,000.00 in annual sales do not exclusively come from New York State"). Courts in this Circuit have consistently held that an individual with supervisor authority, such as Mr. Choi, is an "employer" under the FLSA and NYLL. *See, e.g., Cavalotti v. Daddyo's BBQ, Inc.*, No. 15-CV-6469 (PKC) (VMS), 2018 U.S. Dist. LEXIS 154918, at * 32 (E.D.N.Y. Sept. 8, 2018); *Choudry v. Durrani*, No. 14-CV-4562 (SIL), 2016 U.S. Dist. LEXIS 156365, at *23 (E.D.N.Y. Nov. 10, 2016); *Alladin v. Paramount Mgmt., LLC*, No. 12-Civ-04309, 2013 U.S. Dist. LEXIS 121949, at *4 (S.D.N.Y. Aug. 27, 2013); *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 686 (S.D.N.Y. 2011).

[6] Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1); *see also Elvey v. Silver's Crust West Indian Rest. & Grill, Inc.*, No. 18-CV-126 (FB) (VMS), 2019 U.S. Dist. LEXIS 112908, at *13 (E.D.N.Y. July 3, 2019), *R & R adopted by* 2019 U.S. Dist. LEXIS 141034 (Aug. 20, 2019); *Garcia v. Badyna*, No. 13-CV-4021 (RRM) (CLP), 2014 U.S. Dist. LEXIS 134089, at *5 (E.D.N.Y. Sept. 23, 2014) ("Plaintiff alleges . . . he was an employee . . . as defined by the FLSA. [] It follows . . . that for purposes of this default, [the plaintiff] qualifies as an 'employee' under the FLSA.").

[7] Plaintiff alleges that he was employed as a sales associate and store clerk. These positions are not exempt under 29 U.S.C. § 213 and Plaintiff's unrebutted allegations "are sufficient to establish that he was a non-exempt employee." *Elvey*, 2019 U.S. Dist. LEXIS 112908, at *13.

[8] To establish overtime liability, an employee must prove that he "performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of his work." *Rivera v. Harvest Bakery, Inc.*, No. 13-CV-00691 (ADS) (AYS), 2018 U.S. Dist. LEXIS 141119, at *13 (E.D.N.Y. Aug 17, 2018) (quoting *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 361 (2d Cir. 2011)); *see also Lundy v. Catholic Health Sys. Of Long Island, Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) ("in order to state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of 40 hours."). The FLSA "requires that employers maintain records of employees' wages and hours and that employees be paid one and one-half their regular rate for work in excess of 40 hours per week." *Espinoza v. Indus. Glass & Mirror Inc.*, No. 16-CV-0064 (ARR) (RER), 2016 U.S. Dist. LEXIS 166925, at *2 (E.D.N.Y. Nov. 30, 2016) (citing 29 U.S.C. §§ 207, 211(c), 215(a)) *R&R adopted by* 2017 U.S. Dist. LEXIS 1552 (E.D.N.Y. Jan. 5, 2017)). "Where, as here, the employer has failed to maintain accurate and complete employment records," the employee only needs to submit "sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred." *Jemine v. Dennis*, 901 F. Supp. 2d 365, 375 (E.D.N.Y. 2012) (quoting *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)); *see also Rivera*, 2018 U.S. Dist. LEXIS 141119, at *13 (stating an employee satisfies this burden by "testifying as to his own recollection of the hours worked.").

the amount of overtime Plaintiff is entitled to, they do not challenge that they are liable for at least some amount. (Dkt. No. 45 at 1; Defs.' Opp'n Mem. at 4-5; Inquest Tr. at 13:4-7). Here, Plaintiff's pleadings sufficiently allege that he was not compensated for overtime. Accordingly, Defendants are liable for the overtime violations.

Plaintiff has also sufficiently alleged that Defendants are liable for violations of the wage notice and statement provisions of the NYLL. (Am. Compl. ¶ 1, 27-28; Pl. Decl. 15-16; Inquest Tr. 16:1-16:13). The law requires employers to provide an employee with a wage notice at the time of hiring setting forth the employee's "rates of pay and basis therefore." N.Y. LAB. LAW § 195(1)(a). The employer must also furnish a wage statement, i.e. paystub, every pay period with certain information, including the "the dates of work covered by that payment of wages" and the "rate [] of pay and basis thereof." N.Y. LAB. LAW § 195(3). Plaintiff sufficiently alleged that he was not provided these statements, (Am. Compl. ¶ 1, 27-28; Pl. Decl. 15-16; Inquest Tr. 16:1-16:13), and Defendants have not produced any documentation containing the dates Plaintiff worked or his wages to refute Plaintiff's allegations. Accordingly, Defendants are liable for the wage notice and statement violations.

Finally, Defendants are jointly and severally liable. Since 1923 Sneaker and Mr. Choi are both employers under the respective statutes, they are jointly and severally liable under the FLSA and NYLL for any damages Plaintiff sustained. *Choudry v. Durrani,* No. 14-CV-4562 (SIL), 2016 U.S. Dist. LEXIS 156365, at *23 (E.D.N.Y. Nov. 10, 2016*)*; *Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 686 (S.D.N.Y. 2011); *Shim v. Millennium Grp.*, No. 08-CV-4022 (FB) (VVP), 2010 U.S. Dist. LEXIS 6407, at *2 (E.D.N.Y. Jan. 27, 2010) ("if the individual defendants are 'employers' under the FLSA they will be jointly and severally liable to the plaintiffs"); *see also Godwin v. Buka N.Y. Corp.*, 20-CV-969 (RPK) (CLP), 2021 U.S. Dist. LEXIS 30478, at *12

(E.D.N.Y. Feb. 17, 2021) (citing *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp 2d 114, 128 (E.D.N.Y. 2011) ("[i]ndividuals may be held jointly and severally liable under the NYLL if they meet the statute's definition of an employer.").

### III. Damages

"Although a 'default judgment entered on well-pleaded allegations in a complaint establishes a defendant's liability,' it does not reach the issue of damages." *Elisama v. Ghzali Gourmet Deli, Inc.*, No. 14-Civ-8333 (PGG) (DF), 2016 U.S. Dist. LEXIS 58833, at *9 (S.D.N.Y. Apr. 29, 2016), *R & R adopted by* 2018 U.S. Dist. 175536 (Oct. 10, 2018) (citations omitted). (quoting *Bambu Sales, Inc. v. Ozak Trading, Inc*. 58 F.3d 849, 854 (2d Cir. 1995)). "Once liability has been established, a plaintiff must provide evidence establishing the amount of damages with reasonable certainty." *Rojas v. SH Gen. Contr. Corp*., No. 18-Civ-10253 (VSB) (RWL), 2019 U.S. Dist. LEXIS 186678, at *15 (S.D.N.Y. Oct. 25, 2019), *R & R adopted by* 2019 U.S. Dist. LEXIS 206237 (Nov. 25, 2019). "When a court enters a default judgment and the amount of damages sought does not consist of a sum certain . . . '[t]he Court may conduct hearings . . . to determine the amount of damages.'" *Dominguez v. B S Supermarket, Inc*., No. 13-CV-7247 (RRM), 2015 U.S. Dist. LEXIS 39670, at *18 (E.D.N.Y. Mar. 5, 2015) (quoting FED. R. CIV. P. 55(b)(2)(B). Here, the Court held an inquest on March 5, 2020. (Min. Entry dated 3/5/2020). Plaintiff appeared and Defendants were represented by an attorney.

### A. Statute of Limitations

"The statute of limitations under the FLSA is two years, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." *Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 519 (E.D.N.Y. 2011) (quoting 29 U.S.C. § 255(a)). The statute of limitations for a NYLL claim is six years. N.Y. LAB. L. §

10

198(3). "Where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages." *Elisama*, 2016 U.S. Dist. LEXIS 58833, at * 13 (S.D.N.Y. Apr. 29, 2016), Here, "[i]n light of the FLSA's shorter statute of limitations period . . . Plaintiff's damages under the NYLL are greater than the damages to which he would be entitled under the FLSA." *Elvey*, 2019 U.S. Dist. LEXIS 112908, at *26. Accordingly, I will calculate Plaintiff's damages from July 2, 2012—six years before he filed the original Complaint. See *Rana v. Islam*, 887 F.3d 118, 119 (2d Cir. 2018) ("When two forms of damages are available for the same violation, courts generally award the higher of the two."); *Elisama*, 2016 U.S. Dist. LEIXS 58833, at *13 ("Where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages.") (citations omitted).

### B.  Calculation of Overtime Damages

Both the FLSA and NYLL entitle an employee to "a rate [of pay] not less than one and one-half times the regular rate at which he is employed" for all hours worked in excess of forty hours per week. 29 U.S.C. § 207(a)(1); N.Y. COMP. CODES. R. & REGS. tit. 12 § 142-2.2; *see also Yuquilema v. Manhattan's Hero Corp.*, No. 13-Civ-461, 2014 U.S. Dist. LEXIS 120422, at *3 (S.D.N.Y. Aug. 26, 2014), *R & R adopted by* 2014 U.S. Dist. LEXIS 139061 (Sept. 30, 2014) ("Both federal and state law [] mandate that an employee be paid at a rate not less than one-and-a-half times the regular rate for any time worked beyond the first 40 hours per week.")

An employee bringing an action for unpaid overtime compensation bears the burden of proving that the employee was not properly compensated for work performed. *See Elisama*, 2016 U.S. Dist. LEIXS 58833, at * 9 (citing *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946) *superseded on other grounds* by The Portal-to-Portal Act of 1947, 29 U.S.C. § 251, *et seq.*)

However, under both the FLSA and the NYLL, when an employer's records are inadequate, an employee may meet this burden by producing "sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Rivera v. Ndola Pharmacy Corp*., 497 F. Supp. 2d 381, 388 (E.D.N.Y. 2007) (quoting *Anderson*, 328 U.S. at 687); *see also Santillian*, 822 F. Supp. 2d at 294 ("Plaintiff has submitted a sworn declaration containing information as to hours worked and rates of pay based on estimation and recollection. The information provided by plaintiff is general and not detailed. However, in the default context, where the defendants have failed to dispute plaintiff's allegations . . . plaintiff has provided a sufficient basis for determination of damages.") "Moreover, '[w]here the employer has defaulted, [as here, the employee's] recollection and estimates of hours worked are presumed to be correct." *Santillian*, 822 F. Supp. 2d at 294 (citing *Pavia v. Around the Clock Grocery, Inc*., No. 03-CV-465, 2005 U.S. Dist. LEXIS 43229, at *5 (E.D.N.Y. Nov. 15, 2005)); *see also Elisama*, 2016 U.S. Dist. LEXIS 58833, at * 11.

An employer may refute an employee's claims by presenting the employee's employment records. Under both the FLSA and the NYLL, an employer is required to maintain employment records regarding an employee's wages and hours. 29 U.S.C. § 211(c); N.Y. LAB. L. § 196-a. Accordingly, an "employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordance with [the FLSA's record-keeping provisions]." *Santillian*, 822 F. Supp. 2d at 294 (quoting *Anderson*, 328 U.S. at 688).

At the inquest, Plaintiff testified that he worked sixty-three hours every week and was not compensated at an overtime rate for the hours that he worked in excess of forty. (Inquest Tr. 18:18-24; *see also* Am. Compl. ¶ 22; Pl. Decl. ¶ 10). Defendants dispute Plaintiff's claim arguing that Plaintiff's hours are contradicted by "employment records—signed and acknowledged by plaintiff

himself." (Defs.' Opp'n Mem. at 4; *see also* Inquest Tr. 27:23-64:8). Defendants' "employment records," which were introduced at the Inquest and attached as exhibits to the Memorandum in Opposition, are not employment records at all; they are copies of register receipts and several checks signed by Plaintiff. These receipts only contain the date and time on which they were printed, a comment that says "Pay to: Gerson," various monetary amounts and Plaintiff's signature. (Dkt. Nos. 47-2, 47-3, 47-4). There is no indication what the payments were for and, if they were for wages, the hours that Plaintiff worked[9] or his pay rate. Similarly, Defendants offer copies of eight checks written to "Gerson" or "Gerson Lopez" from 1923 Sneaker and signed by Mr. Choi. (Dkt. No. 47-5). The checks are for various amounts and, like the register receipts, contain no indication of what the payment was for and, if they were for wages, the hours that Plaintiff worked or his pay rate. (*Id.*). The W-2s Defendants submitted are similarly flawed. (Dkt. No. 50-2).

Defendants produced no documents that established the number of hours that Plaintiff worked or his pay rate. In addition, as to wages paid, the Defendants' records are sporadic and incomplete, covering only a brief period of his employment. All of these documents are insufficient to sustain their burden under the FLSA and NYLL to keep adequate records, let alone to rebut Plaintiff's testimony. *See* 29 U.S.C. 211(c); N.Y. LAB. L. 196-a; *Santillian*, 822 F. Supp. 2d at 294. Therefore, Plaintiff's testimony that he worked 63-hours every week for the entirety of his employment stands uncontradicted.

The Court is persuaded, however, that the store was likely closed for some time after Hurricane Sandy. Mr. Choi attested that the store was closed from "late October 2012 through early November 2012" (Dkt. No. 47-1) after "Hurricane Sandy [] devastated the entire Far Rockaway area" (Defs.' Opp'n Mem. at 5). Due to the store's location on Long Island, it is likely

---

[9] The receipts do not list the start and end times for each days' work.

that the store was closed for the time period Choi suggested. Since the store was closed, Plaintiff could not have worked 63 hours per week during that period. Accordingly, in the calculations below two weeks are not included for the relevant time period.

As set forth above, Defendants failed to fully compensate Plaintiff at one and on-half times his hourly rate for twenty-three hours of overtime that he worked each week.

| Date | Overtime Rate[10] | Overtime Owed |
|---|---|---|
| July 3, 2012-December 31, 2013 | $3.75 | $6,555[11] |
| January 1, 2014-December 31, 2014 | $4.25 | $5,083[12] |
| January 1, 2015-December 31, 2017 | $4.75 | $17,089.82[13] |
| January 1, 2018-March 18, 2018 | $5.56 | $1,387.16[14] |
| | TOTAL | $30,114.98 |

As a result, I respectfully recommend that the Court grant Plaintiff $30,114.98 for his unpaid overtime wages.

### C.  Liquidated Damages Under the NYLL

Plaintiff also seeks liquidated damages for unpaid wages under the NYLL. "The NYLL provide[s] for liquidated damages for wage-claim violations, calculated in an amount equal to 100% of the wage underpayments." *Godwin*, 2021 U.S. Dist. LEXIS 30478, at *24 (citing 29

---

[10] $7.50 X 0.5 = $3.75; $8.50 X 0.5 = $4.25; $9.50 X 0.5 = $4.47; $11.11 X 0.5 = $5.56

[11] $3.75 per hour X 23 hours = $86.25 X 76 weeks = $6,555.00. This calculation excludes the two weeks the store was closed due to Hurricane Sandy, and two weeks of overtime are not included in this calculation.

[12] $4.25 per hour X 23 hours = $97.75 X 52 weeks = $5,083

[13] $4.75 per hour X 23 hours = $109.25 X 52 weeks = $17,089.82

[14] $5.56 per hour X 23 hours = $127.77 X 10 weeks = $1,387.16

U.S.C. § 216(b); N.Y. Lᴀʙ. L. §§ 198(1-a), 663(1)); *see also Tacuri v. Nithun Constr. Co.*, No. 14-CV-2908 (CBA) (RER), 2015 U.S. Dist. LEXIS 22074, at *11 (E.D.N.Y. Feb. 24, 2015) (citing N.Y. Lᴀʙ. L. § 663(1)) ("For all NYLL claims that occurred on and after April 9, 2011, the employer is liable for liquidated damages equal to one hundred percent of the total amount of wages found to be due.").

Accordingly, Plaintiff is entitled to $30,114.98 in liquidated damages.

### D. Pre-Judgment Interest

Plaintiff also seeks pre-judgment interest under the NYLL. "The NYLL permits the award of both liquidated damages and pre-judgment interest." *Fermin*, 93 F. Supp. 3d at 38. "Pursuant to [New York] state law, a successful plaintiff may receive prejudgment interest at a rate of nine percent per year." *Elisama*, 2016 U.S. Dist. LEXIS 58833, at * 9 (quoting *Najnin v. Dollar Mt., Inc.*, 14-Civ-5758, 2015 U.S. Dist. LEXIS 141811, at *8-*9 (S.D.N.Y. Sept. 25, 2015) (citing N.Y. C.P.L.R. §§ 5001, 5004). Where, as here, "the plaintiff's damages were incurred at various times, interest may be computed from a 'single reasonable intermediate date' between the dates on which the plaintiff started and stopped incurring damages." *Najnin*, 2015 U.S. Dist. LEXIS 141811, at *8-*9 (citing *Tackie v. Keff Enter. LLC*., No. 14-CV-2074 (JPO), 2014 U.S. Dist. LEXIS 130148, at *6 (S.D.N.Y. Sept. 16, 2014)). "In wage and hour cases, the midpoint of the plaintiff's employment within the limitations period is commonly considered a reasonable choice." *Najnin*, 2015 U.S. Dist. LEXIS 141811, at *9. Therefore, as Plaintiff suggests, simple prejudgment interest is calculated by multiplying the principal by the interest rate by the time period from a singular, midpoint date of accrual of damages up until and including the date judgment is entered. *Cortez v. 8612 Best Coffee Shop, Inc*., 2015 WL 10709830, at *8 (E.D.N.Y. August 14, 2015).

Using the simple interest formula, Plaintiff is entitled to prejudgment interest at a rate of $7.42 per day.[15]  Plaintiff suggests, and this Court accepts, that a reasonable intermediate date from which to calculate accrual of that interest is May 11, 2015, the midpoint of the dates between which the unpaid overtime wages accrued. From May 11, 2015 through the date of this Report & Recommendation, March 5, 2021, the prejudgment interest due to Plaintiff totals $15,767.50.[16] I respectfully recommend that the Court grant Plaintiff that amount, plus an additional $7.42 per day for all days until the Court enters judgment.

### E.  Statutory Damages under the NYLL

Plaintiff further alleges that throughout the duration of his employment Defendants failed to provide him with annual wage notifications and wage statements with each payment of wages. (Am. Compl. ¶ 1, 27-28; Pl. Decl. 15-16; Inquest Tr. 16:1-16:13). Under the NYLL, employers are required to give each employee a notice of his rate of pay at the time of hiring. N.Y. LAB. LAW § 195(1)(a). A plaintiff may recover $50 for each workday the employer failed to provide this notice, not to exceed $5,000. N.Y. LAB. L. § 198(1-b). The NYLL also requires employers to provide employees with wages statements with each wage payment, i.e., paystubs. N.Y. LAB. L. § 195(3). If an employer fails to provide a paystub, a plaintiff may recover $250 for each workday the employer failed to give the notice, not to exceed $5,000. N.Y. LAB. L. § 198(1-d).

Here, Plaintiff alleges that he never received a wage notice or paystub from Defendants at any point throughout the course of his employment. (Am. Compl. ¶ 1, 27-28; Pl. Decl. 15-16; Inquest Tr. 16:1-16:13). Because Plaintiff worked without a wage notice for more than 100 workdays, and for more than 20 workdays without a paystub, he is entitled to recover the maximum

---

[15] ($30,114.98 unpaid overtime wages X .09) / 365 = $7.42

[16] $7.42 X 2,125 days = $15,767.50

statutory damages of $5,000 under Section 195(1) and $5,000 under Section 195(3). Accordingly, I respectfully recommend that the Court award Plaintiff $10,000 in statutory damages.

### F.  Attorney's Fees

In addition to unpaid overtime wages, liquidated damages and statutory damages, the FLSA and NYLL allow prevailing employees to collect "a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b); N.Y. LAB. L. § 198; *see also Juarez v. Precision Apparel*, 12-CV-2349 (ARR) (VMS), 2013 U.S. Dist. LEXIS 131418, at *35 (E.D.N.Y. Aug. 21, 2013) ("Both the FLSA and New York state law provide for an award of reasonable attorney's fees and costs."). The fee application must be supported by "contemporaneous time records" that specify "for each attorney, the date, the hours expended, and the nature of the work done." *Koon Chun Hing Kee Soy & Sauce Factory v. Kun Fung USA Trading Co.*, No. 07-CV-2568 (JG) (SMG), 2012 U.S. Dist. LEXIS 68117, at *34 (E.D.N.Y. Jan. 20, 2012); *N.Y.S. Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). In the Second Circuit, the prevailing party can recover a "presumptively reasonable fee," which is calculated by multiplying the hours counsel reasonably spent on the litigation by a "reasonable hourly rate." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008). "The party seeking reimbursement of attorney[s'] fees bears the burden of proving the reasonableness and necessity of the hours spent and rates charged." *Dacas v. Duhaney*, No. 17-CV-3568 (EK) (SMG), 2020 U.S. Dist. LEXIS 107943, at *5 (E.D.N.Y. June 18, 2020) (quoting *Fermin*, 93 F. Supp. 3d at 525; *see generally Carey*, 711 F.2d at 1148.

Here, Plaintiff requests $28,043.50 in attorney's fees for 112 hours billed by six employees of Borrelli & Associates, P.L.L.C. ("the Firm"): Alexander T. Coleman ("Coleman"), Caroline Bell ("Bell"), Jeffrey Maguire ("Maguire"), Micahel Borrelli ("Borrelli"), Pablo Martinez

("Martinez"), and Thomas Crouch ("Crouch").[17] (Dkt. No. 39-1 ("Maguire Decl.") at 14; Dkt. No. 55-1 ("Maguire Post-Inquest Decl.") ¶ 2). In support of Plaintiff's claim for attorney's fees, Maguire submitted a Declaration before and after the inquest and accompanying billing records. (Maguire Decl.; Dkt. No. 39-7 ("Pre-Inquest Attorney Billing Records"); Maguire Post-Inquest Decl.; Dkt. No. 55-2 ("Post-Inquest Attorney Billing Records")): Below is a chart of the fees and hours requested for each employee:

| Attorney | Requested Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| Michael Borrelli, Esq. | $400/hour | 8.5 | $3,400.00 |
| Alexander T. Coleman, Esq. | $350/hour | 10.6 | $3,710.00 |
| Jeffrey Maguire, Esq. | $295/hour (non-travel) | 48.1 | $14,189.50 |
| | $147.50/hour (travel) | 2.4 | $354.00 |
| Thomas Crouch, Esq. | $200/hour | 18 | $3,600.00 |
| Caroline Bell, Esq. | $200/hour | 8.2 | $1,640.00 |
| Pablo Martinez | $125/hour | 9.2 | $1,150.00 |
| | | TOTAL | $28,043.50 |

Defendants argue that the attorney fees and costs requested by Plaintiff are not "reasonable." (Defs.' Opp'n Mem. at 8.).[18] Specifically, they claim that the hours requested by Plaintiff's attorneys, 84.8 (Dkt. No. 39), are too high for what Plaintiff's attorney called a "simple," unopposed case. (Defs.' Opp'n Mem. at 9; Dkt. No. 39-1). Further, Defendants "object not only

---

[17] Maguire initially requested $20,466 for 84.8 hours for time billed April 17, 2018 to October 1, 2019. (Dkt. No. 39-7). After the inquest, the Firm requested an additional $7,577.50 for 27.2 hours billed January 1, 2020 to May 18, 2020. ("Maguire Post-Inquest Decl.") ¶ 2). Therefore, attorney's request a total of $28,043.50 ($20,466 + $7,577.50 = $28,043.50) for 112 hours (84.8 + 27.2 = 112).

[18] At the end of the inquest, Defendants' attorney requested leave to submit a post-inquest memorandum, even though the Court warned him that doing so would only drive up the cost of attorney's fees. Nevertheless, Defendant's attorney insisted on submitting a post-inquest document, and the Court granted his request. Defendants submitted a post-inquest memorandum, reiterating essentially the same points made in their Memorandum in Opposition (Dkt. No. 54) As anticipated, Plaintiff submitted a reply that included updated billing records for additional hours worked. (Dkt. No. 55-1)

to the number of individuals [nine][19] and amounts of hours assigned to this 'simple' case, but also the hourly rates proposed . . ." (Defs.' Opp'n Mem. at 9). Defendants offer no indication as to what the appropriate hourly rate, number of hours, or number of attorneys should have been.

### i.    Reasonable Hourly Rates

It must first be determined if the requested hourly rates are reasonable. A reasonable hourly rate reflects "what a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 184. "This rate should be based on rates 'prevailing in the community for similar services of lawyers of reasonably comparable skill, experience and reputation.'" *Dacas*, 2020 U.S. Dist. LEXIS 107943, at *5 (quoting *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998)) (collecting cases). As for reasonable hourly rates in comparable cases, "[c]ourts in the Eastern District have recently awarded hourly rates ranging from $300 to $450 for partners, $200 to $325 for senior associates, [and] $100 to $200 for junior associates." *Martinez v. New 168 Supermarket LLC*, 19-CV-4526 (CBA) (SMG), 2020 WL 5260579, at *8 (E.D.N.Y. Aug. 19, 2020) (citations omitted), *R&R adopted by* 2020 WL 5259056 (Sept. 3, 2020); *see e.g., Rodriguez*, 2019 U.S. Dist. LEXIS 144840, at *8; *Hernandez v. Delta Deli Mkt. Inc*., 2019 U.S. Dist. LEXIS 23756, at *10 (E.D.N.Y. Feb. 12, 2019).

The experience of the attorneys requesting fees are described below:

### a.  Attorney Michael Borrelli

Borrelli is the founding and managing partner of the Firm. (Maguire Decl. ¶ 65). At the time of filing, he had practiced law for eighteen years with a primary focus on labor and

---

[19] Plaintiff's attorney attached seven attorney affirmations to the Second Motion for Default Judgment. (Dkt. No. 39-9). It is unclear who these attorneys are or their relation to the case. The case heading for those affirmations is an entirely different case, *Ortiz v. Prestige Kitchen Design, Inc*, 10-CV-5728. Since Defendants do not specify the nine attorneys that they reference, the Court assumes that they are referencing these affidavits, which although there are only seven affidavits, is Exhibit 9 on the EFC entry. Billing was not requested on behalf of any of these attorneys.

employment law cases. (*Id.*) Although Borrelli's current hourly rate charged and paid for by clients is $500, he has requested a rate of $400/hour for this case. (*Id.* at ¶¶ 73-74).

Rates of $400 per hour or higher in FLSA cases have generally been reserved for attorneys with more experience than Borrelli. *See e.g.*, *Fabre v. Highbury Concrete, Inc*., No. 17-CV-984 (CBA) (PK), 2018 U.S. Dist. LEXIS 87995, at *4 (E.D.N.Y. May 24, 2018) (approving an hourly rate of $375 for a founding partner of a law firm who has been practicing law since 1990 and handling wage-and-hour cases since 2008); *see also Martinez*, 2020 WL 5260579, at *8 (recommending $400 hourly rate for an attorney with approximately twenty-three years' experience); *Rodriguez v. Yayo Rest. Corp*., No 18-CV-4310 (FB) (PK), 2019 WL 4482032, at *9 (E.D.N.Y. Aug. 23, 2019) (recommending $450 hourly rate for an attorney with thirty-six years' experience) *R&R adopted by* 2019 WL 4468054 (Sept. 18, 2019); *cf Cohetero v. Stone & Tile Inc*., No. 16-CV-4420 (KAM) (SMG), 2018 WL 565717, at *5 (E.D.N.Y. Jan. 25, 2018) (awarding $375 hourly rate for an attorney with "fifteen years' practice experience, including significant experience in FLSA and NYLL lawsuits.") Accordingly, I respectfully recommend that Borrelli's hourly rate be reduced to $375/hour.

### b.  Attorney Alexander Coleman

Coleman is a partner with the Firm. (Maguire Decl. at ¶ 75). At the time of filing, he had been an attorney for ten years. (*Id.* at ¶ 75). He joined the firm in 2010 after completing a one-year clerkship with a state judge in Virginia. (*Id.* at ¶ 76). He primarily handles wage and hour and employment discrimination cases. (*Id.* at ¶ 77). Based on the above referenced case law, I respectfully recommend that Coleman's hourly rate be reduced to $325/hour. *See Cohetero v. Stone & Tile Inc*., No. 16-CV-4420 (KAM) (SMG), 2018 WL 565717, at *5 (E.D.N.Y. Jan. 25,

20

2018) (awarding $375 hourly rate for an attorney with "fifteen years' practice experience, including significant experience in FLSA and NYLL lawsuits.")

### c.  Attorney Jeffrey Maguire

Maguire is a senior associate with the Firm. (Maguire Decl. at ¶ 81-82). He had been an attorney for approximately nine years at the time this case was filed. Since joining the firm in 2014, he has served as lead counsel on many wage and hour actions and maintains a caseload of thirty to fifty cases. (*Id.* at ¶ 82-83). Maguire served as the lead attorney on this case. (*Id.* at ¶ 84). His normal hourly rate is $300, but he has requested $295/hour (*Id.* at ¶ 84-85). Hourly rates for senior associates in this District range from $200-$325. *See e.g., Martinez*, 2020 WL 5260579, at *8 (citations omitted); *Rodriguez*, 2019 U.S. Dist. LEXIS 144840, at *8; *Hernandez*, 2019 U.S. Dist. LEXIS 23756, at *10. The higher rates are reserved for senior associates that have significant involvement in the case. *See e.g., Armata v. Unique Cleaning Servs., LLC*, No. 13-CV-3625 (DLI) (RER) 2015 U.S. Dist. LEXIS 180995, at *26 (E.D.N.Y. Sept. 14, 2015), *R & R adopted by* 2016 U.S. Dist. LEXIS 118693 (Aug. 30, 2016) (awarding $250/hour to a senior associate with four-years' experience that had significant responsibility in the case). Given Maguire has almost as much experience as Coleman, and his role as lead counsel in this case, his requested fee of $295/hour is appropriate.

### d.  Attorneys Crouch & Bell

Crouch and Bell were both junior associates at the Firm. (Maguire Decl. ¶¶ 87, 89). Crouch and Bell were each admitted to New York for less than a year when they provided their respective assistance on the case. (Maguire Decl. ¶¶ 87, 89). Each attorney provided minimal assistance. Crouch assisted with the drafting of the initial Complaint, which was later edited and revised by both Maguire and Coleman (Maguire Decl. ¶¶ 87; Pre-Inquest Attorney Billing Records).

Similarly, Bell attended the Order to Show Cause hearing with Maguire and assisted him with drafting a motion. (Maguire Decl. ¶¶ 89). Both attorneys request an hourly rate of $200. (Maguire Decl. ¶¶ 88, 89). Due to each attorney's inexperience and minimal involvement, their fee should be reduced to $100/hour. *See e.g., Xin Long Lin v. New Fresca Tortillas, Inc*., No. 18-CV-3246, 2019 U.S. Dist. LEXIS 74505, at *21 (E.D.N.Y. May 1, 2019) (junior associate with one-year experience awarded $100/hour in a straightforward FLSA case).

    **e.  Paralegal Martinez**

Plaintiff's Counsel also seeks to recover fees on behalf of Pablo E. Martinez, who is not referenced in Maguire's Declaration. Martinez is referenced as a "paralegal" in a billing entry for January 24, 2019. (Pre-Inquest Attorney Billing Records). The tasks for which Martinez billed are administerial, and include translating communications, sending correspondences, and maintaining documents. (Pre-Inquest Attorney Billing Records). Plaintiff's Counsel did not provide any information pertaining to Martinez's experience or qualifications. The records list his hourly rate at $125/hour. "The average compensation rate for non-attorney support staff is $90 per hour in this district." *Martinez v. City of New York*, 330 F.R.D. 60, 71 (E.D.N.Y. 2019) (collecting cases); *Hernandez*, 2019 U.S. Dist. LEXIS 23756, at *25 ("courts in the Eastern District have found that $90-$100 is a reasonable rate for paralegals.") Accordingly, I respectfully recommend that Martinez' rate be reduced to $90/hour.

Based on the above reduced rates, the attorney fees should be adjusted as follows:

| Attorney | Adjusted Hourly Rate | Hours Billed | Total |
|---|---|---|---|
| Michael Borrelli, Esq. | $375/hour | 8.5 | $3,187.50 |
| Alexander T. Coleman, Esq. | $325/hour | 10.6 | $3,445.00 |
| Jeffrey Maguire, Esq. | $295/hour (non-travel) | 48.1 | $14,189.50 |
| Jeffrey Maguire, Esq. | $147.50/hour (travel) | 2.4 | $354.00 |

| Thomas Crouch, Esq. | $100/hour | 18 | $1,800 |
| Caroline Bell, Esq. | $100/hour | 8.2 | $820 |
| Pablo Martinez | $90/hour | 9.2 | $828 |
| | | TOTAL | $24,624 |

### ii.     Reasonable Hours Expended

"The second component of calculating attorneys' fees is determining the reasonable number of hours expended on the litigation." *Hernandez*, 2019 U.S. Dist. LEXIS 23756, at *25. "In determining the proper number of hours for which a party should be compensated, the court 'should exclude excessive, redundant or otherwise unnecessary hours . . .'" *Elvey*, 2019 U.S. Dist. LEXIS 112908, at *13 (quoting *Quaratino v. Tiffany Co*., 166 F.3d 422, 425 (2d Cir. 1999)). If the Court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." *Louis Vuitton Malletier, S.A. v. LY USA, Inc*., 676 F.3d 83, 111 (2d Cir. 2012).

Where counsel seeks compensation for time spent completing redundant or administrative tasks, or work that should have been done by a less-skilled practitioner, 'uniform percentage cutbacks are warranted." *Singh v. A&A Mkt. Plaza, Inc.*, No. 15-CV-7396 (AKT), 2019 U.S. Dist. LEXIS 171231, at *29 (E.D.N.Y. Sept. 30, 2019) (quoting *De La Paz v. Rubin & Rothman, LLC*, 11-Civ-9625 (ER), 2013 U.S. Dist. LEXIS 168093, at *4 (S.D.N.Y. Nov. 25, 2013). "One acceptable method for 'trimming the fat' from a fee application, and one that consumes fewer judicial resources than a painstaking review of each time-entry, is for the court to impose an 'across-the-board percentage' cut of the total amount of time claimed." *Fundora v. 87-10 51st Ave Owners Corp.*, No. 13-CV-0738 (JO), 2015 U.S. Dist. LEXIS 20040, at *3-*4 (E.D.N.Y. Feb. 19, 2015) (quoting *In re "Agent Orange" Prods. Liab. Litig.*, 818 F.2d 226, 237-38 (2d Cir. 1987)). For example, in this District, Courts have reduced requested attorney fees by 20%-50% when

billing records contain vague descriptions of the work performed, redundant internal communication, duplication of work, and indication that partner-level rates were charged for tasks that should have been performed by junior level associates or paralegals. *See e.g., Callari v. Blackman Plumbing Supply, Inc.*, No. 11-CV-3655 (ADS) (AKT), 2020 U.S. Dist. LEXIS 79882, at *48 (E.D.N.Y. May 4, 2020), *R & R adopted by* 2020 U.S. Dist. LEXIS 93497 (May 28, 2020); *Pocius v. Sec. Auto Sales Inc.*, No. 16-CV-400 (JFB) (SIL), 2018 U.S. Dist. LEXIS 113761, at *6 (E.D.N.Y. July 6, 2018) (reducing attorneys' fees by 30% in FLSA action for a variety of concerns regarding time entries, including duplicate time); *Chavez v. MCS Claim Servs.*, 15-CV-3160 (JMA) (AKT), 2016 U.S. Dist. LEXIS 37936, at *5 (E.D.N.Y. March 23, 2016) (reducing total hours by 30% since "much of the work in this case could have been conducted by a less experienced associate billing at a significantly lower rate"); *Video Aided Instruction, Inc. v. Y & S Express*, Inc., No. 96-CV-0518, 1996 U.S. Dist. LEXIS 18477, at *6 (E.D.N.Y. Oct. 29, 1996) (reducing partner's hours by 50% where his level of involvement in the case was excessive "in light of [his] qualifications and experience").

Here, a uniform cutback of the requested hours is warranted, as the billing records demonstrate that the Firm frequently charged the highest-partner rates for duplicate administerial tasks that could have been performed by junior associates or paralegals.

The majority of billing entries are for review of ECF bounces and email correspondence. Notably, every entry by Borrelli, the highest billing-partner, describes reviewing e-mails and ECF bounces. Many entries by the Firm's second highest-billing partner, Coleman, also describe administrative tasks related to e-mails and ECF bounce review. These are administerial tasks and should not be billed at partner rates. *Callari*, 2020 U.S. Dist. LEXIS 79882, at *40 (a partner "routinely review[ing] electronic orders and case management orders, [filing] documents on EFC

[], arrang[ing] for the service of motions and discovery, and conduct[ing] other general tasks []
should have been conducted by a paralegal); *Lucerne Textiles, Inc. v. H.C.T. Textiles Co*., 12-Civ-
5456, 2013 U.S. Dist. LEXIS 7820, at *8 (S.D.N.Y. Jan 17, 2013) (finding reduction warranted
for entries billed at partner rates including "receiving and reviewing scheduling order," "receiving
Certificate of Default," and "receiving and reviewing inquest order,") *R&R adopted by* 2013 U.S.
Dist. LEXIS 42555 (S.D.N.Y. Mar. 26, 2013); *Andert v. Allied Interstate, LLC*, 2013 U.S. Dist.
LEXIS 104422, at *9 (S.D.N.Y. July 17, 2013) (denying attorney's request for "partner-level
rates" for "merely reviewing receipt of seven ECF confirmation emails, billing 0.1 hours for each
email received" and noting that this tactic to recover fees is "trivial at best".).

It also appears from the entries that multiple employees billed for the same task. For
example, every ECF bounce was "received and reviewed" by Coleman, Borrelli, *and* Martinez. It
is unreasonable to charge for three employees, two of whom are partners, to review the *same* ECF
bounce or read the *same* email. Further, it is unclear if these entries accurately represent the time
spent on the task, as every entry for email or ECF review is charged at .1 hours. *See Fundora*, 2015
U.S. Dist. LEXIS 20040, at *3-*4  (reducing attorney fees by 10% when attorney billed "separate
0.1 hour entries each time he review or replies to an email or leaves a voicemail because such tasks
"typically take little more than a minute.")

Given the redundant billing for administerial tasks at partner rates, a thirty percent
reduction in requested attorney fees is appropriate. This percentage is based on similar cases where
the Court reduced fees for firms that charged partner-rates for duplicative or administerial tasks.
*See Datiz v. Int'l Recover Assocs.,* NO. 15-CV-3549 (DRH) (AKT), 2020 U.S. Dist. LEXIS 45693,
at *41 (E.D.N.Y. March 12, 2020) ("The redundant internal consultations, overstaffing, and
duplicative work reflected in the billing records warrant a sizeable reduction of the hours billed in

this action."); *Chavez*, 2016 U.S. Dist. LEXIS 37936, at *5; *Dickey v. Allied Interstate, Inc.*, No. 12-CV-9359 (RJS), 2013 U.S. Dist. LEXIS 116713, at *2 (S.D.N.Y. Aug. 1, 2013) (reducing total hours by 20% for excessive redundant internal consultations as well as overstaffing by multiple attorneys or overly qualified attorneys); *Video Aided Instruction, Inc. v. Y & S Express*, *Inc.*, No. 96-CV-518 (CBA), 1996 U.S. Dist. LEXIS 18477, at *6 (E.D.N.Y. Oct. 29, 1996).

     Accordingly, I respectfully recommend that Plaintiff be awarded $17,236.8 in attorney's fees.[20]

## A.   Costs

     Plaintiff is also entitled to recover reasonable costs under the FLSA and NYLL. 29 U.S.C. § 216(b); N.Y. Lab. L. 663(1); *see also Perez v. Queensboro Yang Cleaner, Inc.*, No. 14-CV-7310 (SJ) (JO), 2016 WL 1359218, at *8 (E.D.N.Y. Mar. 17, 2016), *R&R adopted by* 2016 WL 1337310 (Apr. 5, 2016). Plaintiff seeks $2,437.60 in costs, including the filing fee, fees for service of process, WestLaw charges, and FedEx charges. (Dkt. No. 39-8). Plaintiff has not provided copies of the WestLaw, Fedex, or service of process receipts. Accordingly, I respectfully recommend that recovery of those undocumented costs be denied. *See, e.g., Piedra v. Ecua Rest., Inc*., 17-CV-3316 (PKC) (CLP), 2018 WL 1136039, at *20 (E.D.N.Y. Jan. 31, 2018) ("[T]he Court cannot simply accept at face value the other costs that plaintiff's counsel seeks, such as service of process and translator services, without additional supporting documentation for those costs") *R&R adopted as modified in other respects by* 2018 WL 1135652 (Feb. 28, 2018); *cf. Cortes v. Warb Corp*., 14-CV-7562 (FB) (RER), 2016 WL 1266596, at *7 (E.D.N.Y. Mar. 15, 2016) (recommending granting fees associated with PACER where receipts provided), *R&R adopted by* 2016 WL 1258484 (Mar. 30, 2016). Plaintiff should therefore be awarded costs of $400, reflecting the cost

---

[20] $24,624 X .7 = $17,236.8

of the filing fee, of which this Court may take judicial notice. (*See* Dkt. No. 1, Entry dated 3/15/2019 noting "filing fee $400, receipt number ANYEDC-11291285."); *Joe Hand Promotions, Inc. v. Elmore*, No. 11-CV-3761 (KAM) (SMG), 2013 WL 2352855, at *12 (E.D.N.Y. May 29, 2013).

## CONCLUSION

For the reasons set forth above, I respectfully recommend that Plaintiff's Motion for Default Judgment be granted in part and that the Defendants, jointly and severally, are liable for damages in the amount of $103,634.26, itemized as follows: (1) compensatory damages under the in the amount of $30,114.98; (2) liquidated damages in the amount of $30,114.98; (3) prejudgment interest - in the amount of $15,767.50 through March 5, 2021, to increase by $7.42 for each day thereafter until, and including, the date of judgment; (4) statutory damages under the NYLL in the amount of $10,000; (5) attorneys' fees in the amount of $17,236.80; and (6) costs in the amount of $400. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable William F. Kuntz II within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED

**/s/ Ramon E. Reyes, Jr.**
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: March 5, 2021
      Brooklyn, NY